TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/16/2026 09:08:29 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

RECEIVED
AT 8:30 FEB 06 2026
CLERK, U.S. DISTRICT COURT - DNJ
M

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

LEROY THOMAS JOYNER, JR.
Plaintiff,

v.                                                          CASE NO. _____

                                                            JURY DEMAND

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS
UNITED STATES OF AMERICA
Defendant(s)

---

COMPLAINT

---

COMES NOW, the Plaintiff, Leroy Thomas Joyner, Jr. ("Joyner") and shows this Honorable Court the following:

PARTIES, JURISDICTION AND VENUE

---

1. Plaintiff is over the age of majority and is domiciled in Yazoo County, Mississippi and is therefore a citizen of Mississippi.

At most times relevant to these claims, Joyner was domiciled in Muscogee County, Georgia and was therefore a citizen of

Georgia.

2. Defendant, Cellco Partnership d/b/a Verizon Wireless ("VZW") is a Delaware corporation with its primary place of business

in New Jersey and is therefore a citizen of the City of Baskin Ridge, New Jersey.

3. Defendant, United States of America ("USA") is a government with its primary place of business in the City of Washington,

District of Columbia and is therefore a citizen of District of Columbia.

4. Venue is proper in this Court and District as to all Defendants pursuant to 28 U.S.C. & 1332 and because the amount in

controversy has been identified as (50) million dollars.  This Court has exclusive jurisdiction of claims against the United

States pursuant to 28 U.S.C. & 1346(b)(1).

5. Jurisdiction and venue are both proper and original in this United States District Court because complete diversity exist

and because one or more of the Defendants are residents of New Jersey.

6. The Defendants are subject to specific jurisdiction in this matter before this Court as they have purposefully availed

themselves to this forum.  The Defendants engaged in conduct evidencing an intent or purpose to serve the market in the

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/16/2026 02:45:44 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

forum state such as advertising, marketing, entering contracts, providing interactive websites, commencing criminal proceedings, conducting federal investigations, engaging in prosecuting crimes, providing the indigent a defense and establishing a federal criminal system in New Jersey. The incidents causing the injury and damages occurred in the State of New Jersey and Alabama.

7. The Defendants purposefully derived substantial benefit from activities in the State of New Jersey. Their activities inside and outside of the State of New Jersey caused harm to the Plaintiff inside Georgia, Florida, Oklahoma and Mississippi.

8. Defendant, VZW's acts or ommissions occurred in the State of New Jersey which caused the injuries and damages alleged in Georgia, Florida, Oklahoma and Mississippi. The said acts or ommissions of VZW occurred in Baskin Ridge, New Jersey.

9. Defendant, USA's acts or ommissions occurred in the State of New Jersey and Alabama which caused the injuries and damages alleged in Georgia, Florida, Oklahoma and Mississippi. The said acts or ommissions of USA occurred in Baskin Ridge, New Jersey and Montgomery, Alabama.

## STATEMENT OF THE FACTS

10. Defendant, VZW is a telecommunication company and the recognized leader in Sales and Marketing within the United States. VZW has had millions of individual consumers over the past (10) years. It provides cellular services, among other things to its individual consumers. As the trusted leader, VZW provides tlk and text service as well as other services. To be a consumer, a client must have a good credit rating.

11. One of those services is dedicated to the law enforcement community. There, Verizon Wireless provides records for target criminal defendants when subpoenaed to do so by federal agents and courts, including the United States District Court.

12. Defendant USA is a government within the continent of North America. The Constitution of USA guarantees specific rights, especially those afforded by the Fifth and Sixth Amendment.

13. USA is the federal governemnt of America and authorizes as well as confirms persons to lead its courts, attorneys, defense counsels and law enforcement pursuant to its Constitution.

14. As the government, USA has the right to remove these persons with and/or without cause as well as fill vacancies in its criminal system and to amend it Constitution. Additionally, USA has the right to terminate and/or impeach those persons.

2

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

-------------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/16/2026 08:05:06 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

15. The Federal Bureau of Investigation ("FBI"), United States Attorney Office ("USAO"), Federal Public Defenders ("FPD"), United States District Court ("Lower Court"), United States Court of Appeals ("Appellate Court") and the United States Supreme Court ("Supreme Court') (hereinafter referred together as "agents" and the criminal system") investigate, prosecute, defend, supervise, review and resolve criminal matters in approximately (12) Circuits throughout the United States and its territories.

16. These agents are bound by the Constitution to provide due process as guaranteed by the Fifth and Sixth Amendment.

17. In order to fall within the gambit of this criminal system, a defendant must be accussed of violating a federal crime.

18. Any allegations of a crime against the USA are investigated by the FBI. By way of the United States Department of Justice, this authority have been delegated to that agency. As the leading law enforcement agency for the federal government, the FBI has the primary role in whether or not to recommend if charges should be brought against a citizen of the United States.

19. Many times, that decision is made after reviewing records from telecommunication entities such as Verizon Wireless.

20. The primary responsibility in the United States to prosecute alleged crimes against the government lies within the possession of the USAO.

21. Any evidence gathered by the FBI falls within the determinative duties of the USAO on whether or not to charge a citizen of the United States. That determination is often made after reviewing records, including those from telecommunication enties such as Verizon Wireless.

22. When an indictment is returned by the federal grand jury based upon evidence presented by the USAO, the lower court has the duty to supervise the proceedings during the prosecution.

23. That supervisory duty empowers the lower court to consider the sufficiency of the evidence and even dismiss the indictment under several reasons, including prosecutorial misconduct. The outcome of that consideration solely depends on the lower court analysis of records, including those from the telecommunication entities such as Verizon Wireless.

24. Any defense offerred to an indictment is the responsibility of a defense counsel or in most cases at the federal level, the FPD when representing indigent defendants accused of federal crimes.



TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

----------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/16/2026 09:14:37 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

25. The duty to identify any defects in the prosecution or object to any abuse of discretion by the lower court is the sole responsibility of the FPD. This duty is offered by the United States to protect the indigent accused. When creating a defense for those accused, the FPD relies upon discovery, including records from telecommunication entities such as Verizon Wireless.

26. In the event of a conviction, any challenges to that judgment and the sentence at the federal level must be reviewed by the Appellate Court.

27. A correction, vacation or affirmation of a judgment is the sole responsibility of the appellate court, especially in the event of violations of a defendant's constitutional rights. Whether or not to issue a mandate correcting, vacating or affirming a judgment depends upon a review of the evidence, including records from telecommunication entities such as Verizon Wireless.

28. This authority and that of the lower court has been effectuated by the Supreme Court within the powers delegated pursuant to Article III of the United States Constitution.

29. The Supreme Court has the sole duty to be final disposition in any criminal or civil matter that originated at either the state or federal level. The outcome of that disposition depends on whether or not the rights of the accused has been violated, including deprivation of evidence such as records from telecommunication entities such as Verizon Wireless.

30. In the Spring of 2019, FBI recommended that Joyner be charged relating to sexual allegations per their star witness. The recommendation was made despite knowledge that 1) star witness and her mother had destroyed material and exculpatory call and text messages, 2) star witness had offered exculpatory testimony at the November 19, 2018 Protection From Abuse Hearing ("PFA Hearing") in Dale County, Alabama, and 3) star witness offered exculpatory testimony as to the intent of interstate travel at the February 6, 2019 Child Advocacy Center ("CAC") Interview. (hereinafter "exculpatory evidence").

31. The FBI knew that their existed phone conversations between the star witness, her mother and Joyner where the alleged victim was threatened and made to testify falsely as well as testimony at the PFA Hearing stating that "nothing inappropriate" occurred between her and Joyner along with testimony at the 2nd Interview asserting that interstate travel was "just for tennis." (See PFA Hearing and 2nd Interview).

32. The FBI examined both their star witness and her mother's cellular devices and discovered material and exculpatory evidence. That discovery was not provided to the defense, but was destroyed by the star witness and her mother. The FBI provided selected text exchanges between the mother and Joyner in replace and performed a phone dump on the star witness

4

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/17/2026 07:57:03 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

device resulting in a recreation of the material and exculpatory evidence. That database was destroyed as determined by the

forensic expert. (See Doc. 175; Case No. 1:22-CR-00242-ECM-JTA). The existence of this evidence was extensively discussed

at the PFA Hearing and utilized within a civil litigation between Joyner and the star witness' family. (See Case No. 2:18-CV-

1035-WKW-JTA).

33. By the summer of 2019, the USAO learned of the exculpatory evidence, but proceeded with the prosecution. Because the

USAO possessed the power to charge Joyner or refer the charge to the state, they failed to represent the value of the evidence

in accordance with their Constitutional duties. In February 2020, the USAO sought to sidestep this exculpatory evidence by

presenting an indictment to the grand jury that did not require a presentment of that evidence. To accomplish that

misconduct, the USAO colluded with the lower court to interfere with Joyner's civil appeal of his PFA Hearing determination in

a Dale County, Alabama circuit court. That civil appeal was initially vetted by that court and approved to proceed, but was

dismissed in late 2019 based upon a lack of jurisdiction. The USAO eluded to this interference in the lower court at the

motion and evidentiary hearing under Case No. 1:21-cr-00339-RAH-SRW and 1:22-CR-00242-ECM-JTA.

34. The USAO invalid conflation of separate and distinct subsections of 18 U.S.C. & 2241(c) failed to invoke the lower court

subject matter jurisdiction. The FPD raised the deficiency at the June 10, 2020 Detention Hearing.

35. Additionally, the FPD raised with the lower court that the defense was not in possession of the January 23, 2019 nor the

February 6, 2019 CAC Interviews. (hereinafter "1st and 2nd Interview", respectively) as well as the star witness Verizon

Wireless call and text records. (hereinafter "VZW records").

36. At the detention hearing, the USAO ensured the lower court that both interviews and any additional discovery were not

provided due to an Assistant United States Attorney's back injury and would be produced after the seeking of a Protective

Order. (See June 10, 2020 Detention Hearing Transcript). This transcript memoralizes evidence of due process violations.

The lower and appellate court refuse to provide the Plaintiff a transcription of that hearing.

37. The discovery was provided absent the 2nd Interview and the star witness VZW records. The lower court did not dismiss

the indictment sua sponte, eventhough they lack subject matter to proceed.

38. After the 2nd pretrial conference, the USAO obtained a superseding indictment. For a second time, they sidestep the

exculpatory evidence by presenting an indictment to the grand jury that did not require a presentment of that evidence.

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/17/2026 08:23:56 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

Their deficient charging of 18 U.S.C. & 2423(a) with travel within interstate commerce being based upon intrastate transportation failed to state an offense.

39. That issue and others, especially the right to self-representation were raised with the lower court at two hearings. (See April 26, 2021 Faretta Hearing). Those issues were also raised at the motion hearing. (See June 1, 2021 Motion Hearing Transcript). Those transcripts memoralize evidence of due process violations. The lower and appellate court refuses to provide the Plaintiff a transcription of those hearings. At both hearings, the FBI and USAO denied the existence of any additional records for their star witness.

40. The indictment read that & 2423(a) was violated by transportation from Alabama to Georgia in violation of Alabama state law. That tracking of the statutory language did not trigger the crime. The Magistrate Judge recommended that the indictment be dismissed.

41. Having raised that deficiency along with the USAO's non-disclosure of the 2nd interview and the star witness VZW records, the dismissal of the indictment left those issues not adjudicated.

42. The dismissal caused two subpoenas prepared for Verizon Wireless not to be approved by the lower court. ("subpoena #1-2). Joyner filed a direct appeal where the issues previously raised in the appellate court within a mandamus were re-litigated on appeal. Both appeals were dismissed without the disclosure of the exculpatory evidence nor the issuance of the subpoena.

43. In the fall of 2021, the USAO presented an indictment to the grand jury for a third time side stepping the exculpatory evidence. Their disjunctive charging of 18 U.S.C. & 2423(a) relying on interstate travel from Alabama to Georgia being triggered by either an Alabama or Georgia state law, failed to provide Joyner notice of the charge he was required to defend against.

44. The Magistrate Judge recommended that the indictment be dismissed. After conducting a motion hearing, the lower court dismissed the indictment. (See January 21, 2022 Motion Hearing). This transcript memoralizes evidence of due process violations. The lower and appellate court refuses to provide the Plaintiff a transcription of that hearing.

45. That dismissal rendered unadjudicated all issues relating to the exculpatory evidence. A subpoena filed on August 12, 2021, denied on September 30, 2021, refiled on September 30, 2021 and approved on October 1, 2021 was not complied with by Verizon Wireless. (Subpoena #3-4).

6.

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/17/2026 08:50:33 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

46. Unbeknowing to Joyner, Verizon Wireless entered ex parte communications with both the USAO and the lower court regarding the subpoena. They discouraged Verizon Wireless from complying with the subpoena. (See Doc. 174-175; Case No. 1:22-CR-00242-ECM-JTA).

47. That subpoena was originally requested to be filed on july 22, 2021, but the FPD waited until August 12, 2021 to file the subpoena which was approximately two years after the initial production of the star witness VZW records to the FBI. Both the FBI, USAO, lower and appellate court knew that it was the policy of Verizon Wireless to only maintain records for two years after initially being produced. Neither was aware that a subpoena once produced would be archived as sent to that law enforcement agency.

48. The request for disclosure of the 2nd Interview and the star witness VZW records went unadjudicated as a result of the dismissal. That request was made known to the lower court at a pretrial conference, faretta hearing and a second pretrial conference. (See September 22, 2021 Pretrial Conference Transcript, September 27, 2021 Faretta Hearing Transcript and October 13, 2021 Pretrial Conference). These transcripts memoralize evidence of due process violations. The lower and appellate court refuse to provide the Palintiff a transcription of these hearings.

49. While the lower court was considering three motions to dismiss the indictment and a renewal of the Verizon Wireless subpoena ("subpoena #5) as well as a motion for an evidentiary hearing relating to the exculpatory evidence, including the 2nd Interview, the lower court issued a second protective order.

50. That mandate prohibited Joyner from having access to the 2nd Interview, eventhough the USAO had failed to produce it before the expiration of (3) discovery deadlines. The lower court abstained from litigating the non-disclosure of the 2nd Interview, but elected to adjudicate a request for a stronger protective order than previously issued under a prior indictment. (Compare Doc. 18; Case No. 1:20-CR-00033-ECM-SMD and Doc. 60; Case No. 1:21-CR-00339-RAH-SRW).

51. Specifically, the first protective order allowed Joyner to have possession of the interviews outside of a prison facility, but the second protective order restricted his access to the interviews to the USAO business office in the presence of the FBI. The issue supra were known and discussed with the lower court when the indictment was sismissed in early 2022. At that motion hearing, the USAO denied having the disputed additional VZW records and asserted that the 2nd interview could only be

7

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/17/2026 05:57:52 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

viewed by the defense at their office in the presence of the FBI. (See January 21, 2022 Motion Hearing Transcript).

52. The indictment was dismissed and a need to have the star witness VZW records and her 2nd Interview were raised with the lower court in a motion to reconsider and with the FPD within an email. Nearly two months thereafter, the issues supra were dismissed by the appellate court resulting from a mandamus filed in the fall of 2021.

53. After waiting nearly seven months for the production of the records from Verizon Wireless, Joyner was re-indicted under a fourth indictment.

54. A subpoena was filed on September 19, 2022 along with other motions seeking relief as to the exculpatory evidence. ("subpoena #6").

55. The lower court rejected those pleadings by ordering the clerk of court not to proceed pro se. (See Doc. 13; Case No. 1:22-CR-00242-ECM-JTA).

56. That mandate from the lower court compelled Joyner's family to obtain a defense counsel not affiliated with the FPD.

57. After reviewing the case for (90) days and discovering the judicial bias as well as prosecutorial misconduct, that obtained counsel withdrew from the case.

58. A retainer fee of ($7500) from his family was not returned by that counsel, but he did inform the lower court that his further representation would have a material adverse effect on the defense.

59. Joyner and the obtained counsel discussed the concealing of the exculpatory evidence and his unwillingness to confront the judicial bias and prosecutorial misconduct due to his past issues with the FBI and USAO.

60. A second motion to proceed pro se was filed with the lower court. An appeal was filed with the appellate court seeking relief to exercise his right to self-representation and the adverse effect the denial of it was having on his litigation of the exculpatory evidence. The lower court scheduled a faretta hearing to mitigate the issues.

61. At the hearing, joyner was allowed to proceed pro se and the obtained counsel was allowed to withdraw from the case. A standby counsel from the FPD was assigned to the case and a hearing was scheduled to discuss the duties therein.

62. Not only did the assigned FPD counsel fail to attend, he did not contact Joyner to discuss the case for over (10) days.

63. An order was issued to refile the motions previously rejected on September 19, 2022 and a motion hearing was set to discuss the issues.

8

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/17/2026 08:44:43 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

64. The Magistrate Judge opened that hearing by questioning joyner about his ability to construct pleadings. (See February 23, 2024 Motion Hearing Transcript). She berated him about his citing of cases and his signing of pleadings as a "Pro Se Counsel."

65. After that demonstration, the issues were discussed regarding the exculpatory evidence and were concluded by the scheduling of an evidentiary hearing.

66. The lower court had attempted to conduct the motion hearing and the evidentiary hearing simultaneously, but Joyner objected due to a lack of notice. The USAO once again denied the existence of additional VZW records for their star witness.

67. Any idea of conducting both hearings simultaneously was abandoned when Joyner requested to question the FBI Agent in charge of the case about the missing VZW records.

68. The USAO was warned by the lower court to provide proof that only (2) VZW records for its star witness had been provided by Verizon Wireless.

69. While awaiting the hearing, Joyner received a mandate from the appellate court denying his attempt to have them litigate the exculpatory evidence issues. That revelation was followed by joyner contacting Verizon Wireless regarding the missing call and text records.

70. It was told to him that the records were destroyed and would not be available to Joyner. That notice was forwarded to the lower court and the subpoena was withdrawn from the record. ("subpoena #7").

71. Having a need for the material and exculpatory records, Joyner subpoenaed two employees of Verizon Wireless. The subpoenas were approved but the lower court refused to have the United States Marshals service process Verizon Wireless. ("subpoena #8-9")

72. That decision led to the witnesses not being able to attend the April 13, 2023 Evidentiary Hearing. Joyner objected to their absence and filed for a continuance of the hearing.

73. At the hearing, the USAO denied having any additional records and had the FBI Case Agent testify to the same. Joyner was not allowed to question the FBI Case Agent.

74. The USAO informed the lower court that they did not have any proof that no additional records existed for its star witness. The lower court agreed to schedule a second evidentiary hearing to allow the attendance of the Verizon Wireless

9.

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/18/2026 07:24:59 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

employees. For reasons unknown, one of the employees provided (13) additional records for the USAO star witness. That revelation was responded to by the Magistrate Judge as "you have opened up a can of worms."

75. A telephonic hearing was scheduled and counsel for Verizon Wireless admitted that the FBI was given the (13) additional records on August 12, 2019. The USAO sgreed that they had those records in their possession. It was also made known to the lower court that a conversation was had between the USAO and Verizon Wireless where the prosecution discouraged them from

reproducing the star witness records.

76. The lower court questioned the USAO about their prior denials as to there only being (2) VZW records for its star witness. An order was issued regarding the need to file a Rule 17(c)(3) notice.

77. At the second evidentiary hearing, Joyner was not allowed to question the Verizon Wireless employees, eventhough he subpoenaed them to testify. He was also not allowed to question the FBI Case Agent.

78. That theory was adopted by the lower court to excuse the USAO non-disclosure of the (13) additional records despite being required to do so by (4) discovery deadlines, (2) Protective Orders and Rule 16.

79. The lower court refused to dismiss the indictment based upon the prosecutorial misconduct supra, because the USAO represented to the court that the defense had the VZW records, but failed to download it properly. Joyner filed a motion to dismiss the indictment based upon ineffective assistance, but the lower court denied that motion due to testimony given by the Verizon Wireless employee.

80. Because trial was quickly approaching, Joyner requested the assistance of a forensic expert. The lower court approved the application, but denied the requested funding. The FBI Case Agent destroyed the database and deleted records from the star witness call records which identified the missing records.

81. A forensic expert prepared a Declaration of the proposed work and his finding that the phone dump database for the star witness had been deleted. It was also discovered that the spreadsheet of calls previously filed with the lower court had been edited to erase the missing evidence of concealed calls. (Compare Doc. 58-59; Case No. 1:20-CR-00033-ECM-SMD and Doc. 174-175; Case No. 1:22-CR-00242-ECM-JTA).

82. That offering was rejected by the lower court and trial was scheduled for January 22, 2024. Joyner elected to allow the FPD to try the case at trial.

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/18/2026 07:53:47 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

83. In a discussion with the FPD, it was discovered that only (1) out of seven Verizon Wireless subpoenas submitted under (4) indictments was approved by the lower court.

84. At trial, the USAO sought to limit the use of evidence from civil proceedings, including exculpatory testimonial statements made by its star witness at the PFA Hearing that she was not sexually abused by Joyner. They also sought to suppress their star witness testimony expressing that she was never physically abused by Joyner. Those testimonial statements were not played for the jury as the FPD only played (12) seconds of that hearing. (See November 19, 2018 PFA Hearing Transcript). This transcript memorialize evidence of due process violations. The lower and appellate court refuse to provide the Plaintiff a transcription of this hearing.

85. They presented to the jury an edited version of the 2nd Interview that did not contain the exculpatory testimony offered by its star witness that travel within interstate commerce was "just for tennis." (See February 6, 2019 2nd Interview Transcript). These transcripts memorialize evidence of due process violations. The lower and appellate court refuse to provide the Plaintiff a transcription of those proceedings.

86. The USAO knew that it star witness had not only informed a Dale County, Alabama Judge at the PFA Hearing that nothing inappropriate had occurred between her and Joyner, but had testified that she was not physically abused by Joyner. They also knew that their star witness had informed a Child Advocacy Center Interviewer that "interstate travel was just for tennis" during the 2nd Interview.

87. Per the trial record, the lower court knew that the star witness testimonial statements were being concealed by the USAO and the FPD. It was known that the USAO would present evidence to the jury outlining physical and sexual abuse.

88. During the trial, the Judge and her staff had a transcription of the 2nd Interview and could see the exculpatory testimony. When following the edited version of the 2nd Interview, the lower court knew that the exculpatory testimony was absent from the video.

89. The record reflects that the FPD learned of the exculpatory testimony by viewing the 2nd Interview transcript at trial. It was also known by the FPD that the star witness offered exculpatory testimony during the PFA hearing.

90. Nevertheless, neither the USAO, lower court not FPD refrained from allowing this exculpatory testimony to be withheld from the jury.

11

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/18/2026 08:18:37 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

91. In a perfect example of collusion, FPD questioned the star witness about her testimonial statement. The USAO objected based upon the 2nd Interview not being authenticated, eventhough it was their exhibit. The lower court agreed and the FPD failed to establish that the transcripts were entered within the USAO exhibits.

92. The star witness testified falsely at trial regarding her testimonial statement during the 2nd Interview that "interstate travel was just for tennis". There was no objection from the USAO nor the lower court.

93. The USAO utilized that falsehood in their closing argument without objection from the FPD. The lower court did not sua sponte object to its usage.

94. The lower court nor the FPD lodge an objection whenthe USAO removed the 2nd Interview transcript from the exhibits given to the jury. (See August 2, 2024 Status Hearing Transcript). This trnscript memorializes evidence of due process violations. The lower and appellate court refuse to provide the Plaintiff a transcription of that hearing.

95. Having viewed the edited 2nd Interview in its entirety, the lower court, USAO and FPD knew that the removing of the 2nd Interview transcript would effectively conceal the false testimony from the jury.

96. Joyner attempted to secure the 2nd Interview transcript before sentencing, but the FPD refused to disclose that transcription. That request spanned over (10) months.

97. The sentencing date was initially set for May 17, 2024, but the lower court, USAO and FPD made the decision to continue the sentencing on a Sunday due to the star witness giving birth to her child.

98. With a new sentencing date set for August 8, 2024, Joyner raised the FPD failure to disclose the 2nd Interview transcript, among others with the lower court. He also requested an opportunity to have the transcripts to object to the Pre-sentence Investigation Report ("PSR"), but that request was utilized as his objection to the PSR. That outreach was not answered until seven days before the sentencing hearing.

99. At a status hearing, the lower court, USAO and FPD expressed their frustration with Joyner's ongoing efforts to obtain exculpatory transcripts. The hearing was a result of his final attempt to have exculpatory transcripts disclosed before sentencing.

100. The lower court argued that the filing of an expedited motion asserting that the Federal Magistrate Act prohibited magistrates from conducting a fact finding inquiry during the sentencing phase should not be forwarded to her chambers.

12.

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

----------------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/18/2026 08:45:21 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

101. The USAO admitted to removing the 2nd Interview from the trial exhibits and expressed his lack of fondness for being accused of prosecutorial misconduct.

102. The FPD counsel vented that he was aware of the request for transcripts, but wanted to express that he was not Joyner's secretary. (See August 2, 2024 Status Hearing Transcript).

103. The status hearing concluded by the lower court expressing that eventhough the exculpatory transcripts would not be provided before sentencing, they would be available on appeal.

104. After being sentenced, Joyner timely filed a notice of appeal and a motion for transcripts with the lower and appellate court for those exculpatory items.

105. That request which included the sentencing hearing transcript was not answered until a renewed motion was filed over (120) days later.

106. The issued order granted any request for transcripts that were held after August 16, 2022, but denied any request for transcripts that were held prior to that date.

107. There exist prior knowledge with the lower court that this order excluded testimonial statements from the star witness. During Joyner's attempt to object to the PSR, the lower court was placed on notice regarding the exculpatory testimonial statements.

108. That pleading was an exhibit to a motion adjudicated by the lower court. During sentencing Joyner not only objected to enhancements contrary to the exculpatory evidence, but had a specific exchange about the exculpatory testimonial statements value with the lower court. (See August 8, 2024 Sentencing Hearing Transcript). This transcript memorializes evidence of due process violations. The lower and appellate court refuse to provide the Plaintiff a transcription of that hearing.

109. The granting in part and denying in part of transcripts were raised with the appellate court. Prior to that seeking of relief, the appellate court had denied Joyner's accessing of those transcriptions based upon their plain error belief that the proceedings did not have testimonial statements within. That error was repeated when the appellate court summarily affirmed the lower court order denying transcripts containing exculpatory testimonial statements. (See Appellate Case No. 25 -10616). Joyner requested that the mandate be recalled, but that seeking of relief was denied without any precedential explanation based upon the record.

13

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

---------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/18/2026 09:13:46 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

110. Joyner's direct appeal has been stayed in the appellate court. The transcripts necessary to challenge his conviction as well as his sentence and to exercise due process on appeal have not been made available by the lower nor appellate court. There was a stay filed in the Supreme Court additionally.

111. A need exist for transcripts from proceedings prior to August 16, 2022 as well as the August 2, 2024 Status Hearing and the August 8, 2024 Sentencing Hearing. The appellate court stayed the appeal within case no. 24-12605 on December 23, 2025.

112. Throughout the single prosecution of Joyner, Verizon Wireless and the criminal system have committed fraud upon the court such as 1) misrepresenting evidence; 2) providing false testimony and 3) concealing exculpatory and material facts.

113. Verizon Wireless willful non-compliance with a court ordered subpoena was part of a conspiracy to deprive Joyner of due process. Their conversation with the USAO demonstrated the severity of the due process violation as well as the collusion to invoke gender based discrimination. (See Doc. 174-175; Case No. 1:22-CR-00242-ECM-JTA).

114. Their refusal to reproduce a previously production of the star witness records given to the FBI was purposed to deprive Joyner of due process.

115. Their denial of the records being archived for nearly nineteen months aided and abetted the United States of America gender based discrimination prosecution.

116. USA's concealing of material and exculpatory evidence was done for the sole purpose of garnering a conviction. To achieve that result, they chose to commit fraud upon the court.

117. Their criminal system agents did so by 1) destroying and misrepresenting material as well as exculpatory evidence (FBI); 2) concealing and falsely representing material and exculpatory evidence (USAO); 3) providing willful ineffective assistance in regards to the disclosure of material and exculpatory evidence (FPD); 4) suppressing and failing to consider material and exculpatory evidence (lower court); 5) ignoring misconduct by the FBI, USAO, FPD and lower court under (7) appeals regarding material and exculpatory evidence; and 6) extending due defference on the issues supra to the appellate court (Supreme Court).

118. The failure of the criminal system to provide the Plaintiff access to due process has been adopted by other courts. The State Court of Georgia (Muscogee County) allowed professional attorneys to file a civil action against the Plaintiff, based upon

TRULINCS  18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/19/2026 08:13:25 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

the conviction supra. (See Case No. CV-SC2025CV001349).  There, those attorneys willfully misrepresented the time alleged

accusations occurred to sidestep the holding in Esquintel-Quintana v. Sessions, 198 Led 2d 22, 33 (2017) (holding that any

allegations of sexual abuse regarding a victim that is sixteen years of age or older does not constitue a claim).  They knew or

should have known that the alleged misconduct was made regarding travel that were transacted after May, 2017. (See United

States Tennis Association Tournament Report).  Based upon that report, even if the allegations were accurate, they occurred

when that plaintiff was (16) years-old.  Any reasonable and diligent attorney would have not only verified when tournaments

occurred, but would have not filed a civil action contrary to the Supreme Court holding supra.

119. The failure of the criminal system to provide the Plaintiff access to due process was also adopted by the State Court of

Alabama (Barbour County).  They allowed professional attorneys to re-file the civil action supra eventhough the facts within a

federal prosecution clearly reveals that the Plaintiff was a resident of Georgia.  This Court also allowed professional attorneys

to misrepresent the facts to represent that the Plaintiff was a resident of Georgia when the complaint clearly states that she

resided with her mother in Clayton, Alabama. (See Case No. 06-CV-2025-90032).

120. The State Court of Alabama also allowed the USAO star witness to falsely claim that she was sexually abused when

traveling through Barbour County alone with Joyner. (See Casey Sanders v. Leroy Thomas Joyner, Jr.; 3rd Judicial Circuit). This

willful misrepresentation was purposed to invoke that court's jurisdiction.  That complaint never pled that the star witness

resided in Georgia or attended practices in Georgia outside of traveling with her teammates.  The record contain facts that

the star witness lived in Alabama and practiced in Ozark, Alabama daily.  She only traveled through Barbour County with her

teammates whenheading to and from tournaments in Georgia and South Carolina.

121. The failure of the criminal system to provide the plaintiff access to due process has been adopted by the United States

District Court in the Middle District of Alabama.  That federal court allowed professional attorneys to seek a removal of a case

despite one of the defendants not consenting to the removal.  Despite no consent, that Court is still considering the possibility

of granting the motion.  All these failures to exercise due process on the behalf of the Plaintiff were made possible by the due

process violations that has permeated throughout the criminal system.

122. The cumulative effect of these negligent misrepresentations as well as gender discrimination has not only damaged

Joyner, but has created an avenue to falsely accuse others of being in comliance with the alleged sexual abuse.  These

15

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

-------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/19/2026 08:52:28 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

misrepresentations have engulfed the United States Tennis Association ("USTA") and Dorothea Lee Joyner ("Ms. Joyner").

Neither had any physical contact with the accusations directly or indirectly. As it relates to the USTA, their contact with Joyner

and the allegations were their hosting of a website to register players for tournaments and to officiate matches played by

competitors. They never met joyner or employed him to participate in an association that was their competitor in the rural

and underprivileged communities. In regards to Ms. Joyner, she did not have any contact with the alleged victim outside of

emails, text and phone calls from July, 2015 to May, 2017.

123. The alleged victim only made contact with Ms. Joyner when heading to tournaments where travel through Georgia was

necessary. The accusation and Ms. Joyner both had contact with the alleged victim after May, 2017 when she had reached the

age of sixteen. No player ever had contact with Ms. Joyner alone or outside of being with a group of players traveling to a

tournament. Ms. Joyner was gracious enough to allow these players to reside or be fed at her home in Columbus, Georgia. To

allege that the USTA and Ms. Joyner aided and abetted Joyner in the alleged misconduct is a factual misrepresentation that

was known or should have been known by professional attorneys.

124. As a direct and proximate result of the cumulative acts of the Defendants acting by and through its employees and an

establish criminal system, including, but not limited to, FBI, USAO, FPD, lower court, appellate court and Supreme Court, the

Plaintiff suffered bodily injury and resulting pain and discomfort disability, mental anguish, emotional distress, loss of capacity

for the enjoyment of life, future expense of an orthodontis, and dental care and treatment, loss of estate earnings, and loss

of ability to earn money as a result of intellectual property investment. The losses are either permanent or continuing, and

Plaintiff will suffer the losses in the future.

125. The cumulative effect of these due process violations and those from the conviction has caused losses within the

intellectual property investment into DP Resolutions, LLLP, In Depth Academy, In Depth Multi-Media, Bachi Sports, LLLP, Ace of

Properties, LLLP, Steamy Breeze LLLP, Clique Wireless, LLLP and Grassroots Tennis Association, LLLP. Because the
conviction

and subsequent civil actions forced the closure of these entities, Joyner has loss all and any intellectual property investment

accrued and produced in the past, presently and in the future.

126. The past, current and future losses are based upon the Plaintiff's intellectual property investment in the entities supra.

That investment has been permanently rendered incapable of earning a return on invested monies and intellect as well as

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

---------------------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/19/2026 09:24:13 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

the corporate and local business along with governmental relationships that have been forged throughout the Southeast over

the last (20) plus years.

COUNT ONE

_____

WILLFUL DEPRIVATION OF DUE PROCESS
(NEW JERSEY)

127. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

128. To state a claim under Bivens, a claimant must show 1) a deprivation of a right secured by the Constitution or laws of

the United States; and 2) that the deprivation of the right was caused by an official acting under color of federal law. See

Couden v. Duffy, 446 F.3d 483, 491 (3rd Cir. 2006).

129. The law in the Third Circuit explicitly states, "an action against the Government officials in their official capacities

constitutes an action against the United States; and Bivens claims against the United States are barred by sovereign immunity,

absent an explicit waiver." See Lewal v. Ali, 289 F. App'x. 515, 516 (3rd Cir. 2008).

130. Defendants VZW and USA had a duty of care to Plaintiff, as well as to all consumers along with plaintiffs and defendants

when advertising, marketing, entering contracts and providing interactive websites or conducting criminal proceedings,

conducting federal investigations, engaging in prosecuting crimes, providing the indigent a defense and establishing a federal

criminal system in New Jersey. That duty called for Verizon Wireless and the FBI, USAO, FPD, lower court, appellate court and

Supreme Court to timely, adequately and appropriately investigate, heed and act on all reasonable suggestions and information

that its employees and agents had the propensity to, and/or had engaged in collusion and misconduct in the course and scope

of their employment and/or agency relationship with Plaintiffs and Defendants ("parties").

131. Defendants VZW and USA had a duty of care to plaintiff, as well as other parties, to prohibit its employees and criminal

system from depriving access to due process given its propensity to commit fraud upon the court and otherwise mentally along

with emotionally injure parties.

132. At all material times, Defendants VZW and USA knew or reasonably should have known that the criminal system had the

propensity to allow an agent of the FBI, USAO, FPD, lower court, appellate court and Supreme Court to conceal evidence and

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/19/2026 02:46:51 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

otherwise mentally and emotionally injure parties.

133. At all material times, Defendants VZW and USA knew that the criminal system was in a position where they would have unfettered control over indicted parties without direct supervision, judicial oversight, and genuine appellate review of the misconduct.

134. The FBI, USAO, and FPD used their position as officers of the court to commit fraud upon the court and to withhold due process from the Plaintiff.

135. Defendants VZW and USA knew or should have known that the criminal system had committed fraud upon the court prior to the Plaintiff's prosecution and that the clerks of court and court reporters had aided and abetted in the criminal system's misconduct against plaintiffs and defendants.

136. Defendants failed to sufficiently review past msconduct and failed to adequately sanction the criminal system. Had Defendants conducted a reasonable review, the investigation would have revealed that the criminal system had a propensity to destroy, conceal, and suppress material and exculpatory evidence and was otherwise unsuitable for the duties and responsibilities of their position as officers of the court.

137. Defendants had a duty of care to Plaintiff, as well as to other consumers and parties to protect Plaintiff and to otherwise ensure the due process rights of its consumers and parties, including Plaintiff from being deprived of a constitutional right by the criminal system, including the clerks of court and the court reporters.

138. In breach of their duty of care, Defendants VZW and USA were also negligent and/or wanton in supervising the criminal system.

139. Additional negligent, careless and wanton acts and ommissions of the Defendants include but are not limited to:

a. Failing to establish reasonable criteria for the admitting or not admitting of material and exculpatory evidence;

b. Failing to exercise reasonable care to ensure that the duty of accountability of the criminal system is properly discharged;

c. Failing to exercise reasonable care to detect when misconducts of the criminal system are detrimental to due process;

d. Failing to exercise reasonable care to detect the criminal system's actions that violate the Federal Rules;

e. Failing to exercise appropriate and reasonable care in granting privileges to officers of the court, such as attorneys;

f. Creating a culture of secrecy and bad faith in the criminal system to suppress material and exculpatory evidence.

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/19/2026 03:21:26 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

140. As a direct and proximate result of the cumulative acts of Defendants acting by and through its criminal system including, but not limited to, FBI, USAO, FPD, lower court, appellate court and Supreme Court, the Plaintiff suffered bodily injury and resulting pain and discomfort disability, mental anguish, emotional distress, loss of capacity for the enjoyment of life, future expense of an orthodontis and dental care and treatment, loss of intellectual property earnings, and loss of ability to earn money from intellectual property investments. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, because the claim supra 1) has been filed within the statutory time limit imposed by 28 U.S.C. & 2401(a); 2) has been filed pursuant to a limited waiver as expressed within 28 U.S.C. & 2679(b)(2) and/or 28 U.S.C. & 2680(a) and/or 28 U.S.C. & 1346(b)(1); 3) has been filed after identifying the existence of a physical injury to his dental capacity as promulgated by 28 U.S.C. & 1346(b)(2); 4) has been filed by properly identifying employees of the United States of America pursuant to 28 U.S.C. & 2671; and 5) has been filed by recognizing that the willful negligent acts and ommissions of employees of the United States of America acting within the scope of their office invokes the United States as the defedant as noted in 28 U.S.C. & 1346(b)(1), Plaintiff demands judgment against Defendants VZW and USA for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

## COUNT TWO

### GENDER BASED DISCRIMINATION
### (NEW JERSEY)

141. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

142. The law in the Third Circuit explicitly states "A plaintiff alleging a constitutional violation must proffer sufficient evidence to allow a reasonable jury to infer that the policy or custom of the defendant(s) to provide more rights to the alleged victim than to those accused of the said crime was a motivating factor and that the plaintiff was injured by that policy or custom." See Hynson v. City of Chester Legal Department, 864 F.2d 1026, 1030-31 (3rd Cir. 1988).

143. Pursuant to the United States Constitution, a special relationship existed between said Defendants VZW and USA with Plaintiff, as well as a relationship of control over the criminal system, whereby all of the said Defendants owed Plaintiff a duty to, inter alia, protect him from gender discrimination by the criminal system; employ or retain suitable employees, judges and

19

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/20/2026 06:53:21 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

officers of the court to whom they entrusted the care of their consumers and parties; insitute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent gender discrimination directed to their parties by the criminal system; to adequately train and educate its judges and officers of the court on detecting indicia of bad faith acts and/or reporting to the appropriate authorities or agency any reasonable suspicion of gender discrimination; to investigate complaints of gender discrimination against parties; to impeach and/or revoke the license of judges nd officers of the court that have engaged in and/or permitted the gender discrimination of male parties; to notify and warn parties and their representation of judges and officers of the court that have engaged in and/or permitted the gender discrimination of parties and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

144. In breach of their duty of care, VZW and USA concealed material and exculpatory evidence from the jury. By denying him access to the star witness VZW records, then extending that concealment to her PFA Hearing and 2nd interview, the jury failed to consider material and exculpatory evidence.

145. Pursuant to the United States Constitution, a special relationship existed between the FBI, an agent of USA and Plaintiff, as well as a relationship of control over him, whereby the said Bureau owed Plaintiff a duty to, inter alia, protect him from false allegations by their agents; employ or retain suitable agents to whom they entrusted the care of their investigation; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to safeguard against agents bad faith within their investigations; to adequately train and educate its agents on detecting indicia of bad faith behaviors and/or reporting to the supervisor any reasonable suspicion of misconduct; to investigate complaints of misconduct against agents; to suspend and/or terminate the employment of agents that have engaged in and/or permitted gender discrimination of a target of any investigation; to notify and warn targets and their representation of agents that have engaged in and/or permitted gender discrimination of an accused; and/or to otherwise conduct themselves with due care as to avoid injuring Plaintiff.

146. In a breach of their duty of care, the FBI 1) investigated an alleged crime, 2) discovered material and exculpatory evidence, and 3) destroyed and concealed that evidence. The destruction of phone and text messages from the star witness devices and that of her mother crippled the defense. Their concealment of the star witness VZW records and her 2nd Interview deprived Joyner of a defense for an element of the charged offense.

20

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

----------------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/20/2026 07:25:12 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

147. Pursuant o the United States Constitution, a special relationship existed between the USAO, an agent of USA and Plaintiff, as well as a relationship of control over him, whereby the said attorneys owed Plaintiff a duty to, inter alia, protect him from gender discrimination by their attorneys; employ or retain suitable attorneys to whom they entrusted the care of the accused; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent indictments based upon false allegation; to adequately train and educate its attorneys regarding the insufficient tracking of federal statutes and/or reporting to supervisors any reasonable suspicion of gender discrimination; to investigate complants of prosecutorial misconduct against attorneys; to terminate and/or revoke the licenses of attorneys that have engaged in and/or permitted gender discrimination of the accused; to notify and warn the accused and their representation of attorneys that have engaged in and/or permitted gender discrimination of the accused and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

148. In a breach of their duty, the USAO analyzed the evidence collected by the FBI and learned of the material and exculpatory testimonial statements. Eventhough the USAO resisted prosecuting Joyner initially, they concealed the evidence in concert with the FBI and deprived him of a defense. Their denial was not only willfully negligent, but was calculated to secure an invalid conviction.

149. Pursuant to the United States Constitution, a special relationship existed between the FPD, an agent of USA and Plaintiff, as well as a relationship of controll over him, whereby the said Defenders owed Plaintiff a duty to, inter alia, defend him against gender discrimination by the USAO; employ or retain suitable Defenders to whom they entrusted the care of their clients; institute and enforce appropriate policies, procedures, rules, regulations and requirements necessary to prevent ineffective assistance rendered to their clients by Defenders; to adequately train and educate its Defenders and professional attorneys on detecting indicia of destruction, concealment and suppression of material and exculpatory evidence and/or reporting to the lower court any reasonable suspicion of prosecutorial misconduct; to investigate complaints of ineffective assistance against Defenders; to terminate and/or revoke the license of Defenders that have engaged in and/or permitted gender discrimination of their client; to notify and warn clients and their representation of Defenders that have engaged in and/or permitted the gender discrimination by the USAO; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

---------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/20/2026 08:41:37 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

150. In a breach of their duty of case, The FPD joined the FBI and USAO collusional efforts and deprived Joyner of a defense. Their inaction in regards to the material and exculpatory evidence placed Joyner in danger. Without a defense and an advocate on his behalf, he was unable to protect his constitutional rights. Under four indictments, the FPD never filed a motion contesting the validity of the charge or the deprivation of the material and exculpatory evidence.

151. Pursuan to the United States Constitution, a special relationship existed between the lower court, an agent of the USA and Plaintiff, as well as a relationship of control over the criminal proceedings whereby all of the said defendants owed Plaintiff a duty to, inter alia, protect him from gender discrimination by the criminal system; employ or retain suitable judges, clerks of court and court reporters to whom they entrusted the care of parties; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent gender discrimination directed to their parties by the criminal system; to adequately train and educate its judges, clerks of court and court reporters on detecting indicia of bad faith acts and/or reporting to the appropriate authorities or agency any reasonable suspicion of gender discrimination; to investigate complaints of gender discrimination against parties; to impeach and/or revoke the license of judges, clerk of court and court reporters that have engaged in and/or permitted the gender discrimination of male parties; to notify and warn parties and their representation of those within the criminal system that have engaged in and/or permitted the gender discrimination of parties and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

152. In breach of their duty of care, the lower court failed to supervise the proceedings within each indictment. Under every prosecution the lower court heard argument with supporting evidence that the FBI and USAO destroyed and concealed material and exculpatory evidence. Their silence allowed those officers of the court, including the FPD to escalate the destruction and concealment of evidence. AS evidenced by the record, the lower court colluded with the officers of the court by docketing an ex parte order for a VZW subpoena which allowed the USAO to have ex parte communication with Verizon Wireless. See Doc, 31; Case No. 1:21-CR-00339-RAH-SRW. The lower court not only entered into ex parte communications with Verizon Wireless also, but docketed an ex parte order for a forensic expert. That willful negligence led to the destruction of VZW records stored in Google. The account was owned and controlled by an attorney for FPD, but the USAO and the FBI were hidden users.

153. Pursuant to the United States Constitution, a special relationship existed between the appellate court, an agent of USA and Plaintiff, as well as a relationship of control over the appeal of convictions and federal judgments, including the

22

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

---------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/20/2026 09:33:22 PM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

compelling of the lower court to produce material and exculpatory evidence, whereby the said court owed Plaintiff a duty to, inter ala, protect him from gender discrimination by the criminal system; employ and retain suitable circuit judges, clerks of court and case handlers to whom they entrusted the care of those on appeal; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent gender discrimination; to adequately train and educate its circuit judges, clerks of court and case handlers on detecting indicia of bad faith behaviors and/or reporting to the Chief Judge any reasonable suspicion of judicial misconduct; to investigate complaints of misconduct against circuit judges; to impeach and/or revoke the licenses of circuit judges that have engaged in gender discrimination and/or permitted gender discrimination of those on appeal; to notify and warn those on appeal and their representation that have engaged in and/or permitted gender discrimination of those on appeal; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

154. In breach of their duty of care, the appellate court failed to review the proceeding within the lower court under four indictments, Their review of issues and associated supporting evidence resulted in a denial as moot each time. There was never any adjudication of the raised issues within five appeals. In a show of complete complicity on concealing exculpatory evidence before, during and after trial, the appellate court disregarded a plain error that an issued summary affirmance was executed in error. They denied the disclosure of transcripts that contained exculpatory testimonial statements and both the lower court and the appellate court knew or should have known that if heard by the jury, there existed a probability that the proceedings would have been different. That breach of duty was a continuance of their role in concealing material and exculpatory evidence.

155. Pursuant to the United States Constitution, a special relationship existed between the Supreme Court, an agent of USA and the Plaintiff, as well as a relationship of control over him, whereby the said court owed Plaintiff s duty to, inter alia, protect him from a failure to review final dispositions from the appellate court; employ or retain suitable justices, clerks of court and case handlers to whom they entrusted the care of their petitioners on certiorari; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to offer genuine review of final dispositions; to adequately train and educate its justices on detecting indicia of misconduct within the lower and appellate court and/or reporting to the Chief Justice any reaonable suspicion of misconduct; to nvestigate complaints of misconduct against justices;

23

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

---------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/21/2026 08:38:49 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

to impeach and/or terminate the employment of circuit judges, clerks of court and case handlers that have engaged in and/or

permitted gender discrimination of a petitioner; to notify and warn petitioners and their representation of circuit judges,

clerks of court and case handlers that have engaged in and/or permitted gender discrimination of petitioners; and/or to

otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

156.  In breach of their duty of care, the Supreme Court provided the lower court and appellate court due deferrence in

adjudicating the matter on two ocassions.  Under two petition for certiorari, Joyner has filed (4) petitions and (3) motions to

stay the appeal until the material and exculpatory transcripts are disclosed.  All except one have been denied and that motion

is likely to be denied as moot due to the appellate court mysteriously staying the appeal without any evidentiary support for

that adjudication.  Adding to that mystery, a letter requesting a rehearing in accordance to Supreme Court rules was sent to

Katie Hiedrick and that pleading is being represented by clerks as never have been docketed.  That scenario creates the

appearance that the Supreme Court and the appellate court are colluding to determine a method to work around the plain error

created by excluding material and exculpatory testimonial statements from the jury.

157.  Said Defendants, and each of them, breached said duties by, inter alia, failing to sufficiently protect Joyner's right to due

process before obtaining an indictment permitting the USAO to prosecute him without granting access to material and

exculpatory testimonial statements; engaging in, and/or aiding and abetting the engagement in destroying, concealing and

suppressing material and exculpatory testimonial statements as well as evidence; permitting the lower court to conduct a trial

absent the relevant rules, regulations, ordinances or statutes designed to protect parties from a violation of their due process;

failing to detect and/or prevent gender discrimination as well as a course of deprivation behavior towards parties; failing to

appropriately educate and/or train employees, judges and officers of the court on detecting and/or deterring deprivational

conduct toward parties; failing to exercise control over the criminal system and/or to intervene on Plaintiff's behalf; failing to

implement and/or enforce policies and procedures for the protection of parties; and failing to notify and warn Plantiff or his

representation that the criminal system posed a significant risk to Plaintiff's due process rights.

158.  As approximate result of Defendants' gender discrimination, the Plaintiff was deprived of due process and the Plaintiff

was injured and damaged as follows: Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement,

mental anguish, emotional distress, loss of capacity for the enjoyment of life, medical care and treatment, loss of earnings,

24

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

---

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/21/2026 09:53:27 PM

To:
Inmate Work Assignment: U.S DISTRICT COURT

and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, because the claim supra 1) has been filed within the statutory time limit imposed by 28 U.S.C. & 2401(a); 2) has been filed pursuant to a limited waiver as expressed within 28 U.S.C. & 2679(b)(2) and/or 28 U.S.C. & 2680(a) and/or 28 U.S.C. 1346(b)(1); 3) has been filed after identifying the existence of a physical injury to his dental capacity as promulgated by 28 U.S.C. & 1346(b)(2); 4) has been filed by properly identifying employees of the United States of America pursuant to 28 U.S.C. & 2671; and 5) has been filed by recognizing that the willful and negligent acts and ommissions of employees of the United States acting within the scope of their office invokes the United States as the defendant as noticed in 28 U.S.C & 1346 (b)(1).

## COUNT THREE

### CIVIL CONSPIRACY
### (NEW JERSEY)

159. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

160. A special relationship existed between Defendant VZW and the FBI, an agent of USA, as well as a relationship of due process with Plaintiff, whereby all of said Defendants owed Plaintiff a duty to, inter alia, protect him from a civil conspiracy by their employees and agents; employ or retain suitable employees and agents to whom they entrusted the care of their targets; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent civil conspiracy directed at parties by both Defendants; to adequately train and educate its employees and agents on detecting indicia of conspiratorial behaviors and/or reporting to supervisors any reasonable suspicion of civil conspiracy; to investigate complaints of misconduct against employees and agents; to terminate and/or revoke the license of employees and agents that have engaged in and/or permitted the conspiracy; to notify and warn parties and their representation of employees and agents that have engaged in and/or permitted conspiratorial acts; and/or to other wise conduct themselves with due care so as to avoid injuring Plaintiff.

161. In breach of their duty of care, VZW produced records for the FBI, then represented to joyner that the said records no longer existed for his defense. The FBI investigated those records in its entirety, then represented that the records did not

25

TRULINCS  18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

---------------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Reqest to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/22/2026 06:26:54 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

exist.  They agreed to represent that the records did not exist for the Plaintiff to investigate on defense.

162.  A special relationship exist between said Defendants FBI and USAO, both an agent of USA, as well as a relation ship of

indictment and prosecution, whereby all of the said Defendants owed Plaintiff a duty to, inter alia, protect him from

conspiratorial misconduct by their agents and attorneys; empoly and retain suitable agents and attorneys whom they entrusted

the care of those being indicted and prosecuted; institute and enforce appropriate policies, procedures, rules, regulations, and

requirements necessary to prevent civil conspiracy directed at those being indicted and prosecuted by the criminal system; to

adquately train and educate its agents and attorneys on detecting indicia of conspiratorial behaviors and/or reporting to

supervisors any reasonable suspicion of civil conspiracy; to investigate complaints of misconduct against parties; to notify and

warn parties and their representation that have engaged in and/or permitted the conspiratorial behavior and/or to otherwise

conduct themselves with due care so as to avoid injuring Plaintiff.

163.  In breach of their duty of care, the FBI recommended that Joyner be indicted absent a reliance upon the VZW records,

PFA Hearing and 2nd Interview material and exculpatory testimonial statements.  The USAO followed by approving an

indictment without relying on the VZW records, PFA Hearing and the 2nd Interview.  They both agreed to represent that an

indictment was warranted eventhough the evidence counseled against charging the Plaintiff.

164.  A special relationship existed between the USAO and the lower court, as well as a relationship of prosecuting and

supervising proceedings, whereby the said Defendants owed Plaintiff a duty to, inter alia, protect him from civil conspiracy by

their attorneys and judges; employ and retain suitable attorneys and judges to whom they entrusted the care of those being

prosecuted; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent

civil conspiracy directed at those being prosecuted; to adequately train and educate its attorneys and judges on detecting

indicia of conspiratorial behaviors and/or reporting to supervisors any reasonable suspicion of civil conspiracy; to investigate

complaints of misconduct against attorneys and judges; to terminate and/or impeach attorneys and judges that have engaged

in and/or permitted the conspiratorial misconduct of those being prosecuted; to notify and warn parties and their

representation of attorneys and judges that have engaged in and/or permitted the conspiratorial misconduct and/o to

otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

165.  In breach of their duty of care, The USAO misrepresented Joyner's charged offense under three separate indictments.

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

------------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/22/2026 07:23:04 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT


the lower court disregarded the misrepresentations. They agreed to indict, dismiss, reindict, dismiss and reindict the Plaintiff eventhough material and exculpatory testimonial statements existed that was contrary to a requisite element of the offense.

166. A special relationship existed between the FPD and USAO, both agents of USA, as well as a relationship to provide Plaintiff discovery for a defense, whereby the said Defendants owed Plaintiff a duty to, inter alia, protect him from a deprivation of material and exculpatory testimonial statments; employ or retain suitable defenders and attorneys to whom they entrusted the care of those being defended; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent civil conspiracy directed at those being defended; to adequately train and educate its defenders and attorney on detecting indicia of conspiratorial behaviors and/or reporting to supervisors any reasonable suspicion of conspiratorial misconduct; to investigate complaints of misconduct against defenders and attorneys; to terminate and/or revoke the licenses of defenders and attorneys that have engaged in and/or permitted the conspiratorial misconduct; to notify and warn parties and their representation of defenders and attorneys that have engaged in and/or permitted the misconduct to infiltrate the criminal system; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

167. In breach of their duty of care, the FPD and USAO colluded to conceal material and exculpatory testimonial statements from the jury resulting in constitutional damages to the Plaintiff. Both knew that testimonial statements from the USAO's star witness, if heard by the jury would result in an element of the charged offense not being met. To conceal and support the suppression of material and exculpatory testimonial statements, the FPD and USAO conspired to ensure the conviction of the Plaintiff.

168. A special relationship existed between the lower court, an agent of the USA and the State Court of Alabama, as well as a relationship of due process, whereby both courts owed the Plaintiff a duty to, inter alia, protect him from conspiratorial misconduct by their officers of the court; employ and retain suitable officers of the court to whom they entrusted the care of those being accused; institute and enforce ppropriate policies, procedures, rules, regultions, and requirements necessary to prevent conspiratorial misconduct directed at those being accused; to adequately train and educate its officers of the court on detecting indicia of conspiratorial behaviors and/or reporting to supervisors any reasonable suspicion of civil conspiracy; to investigate complaints of conspiratorial misconduct against officers of the court; to terminate and/or revoke the license of

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/22/2026 07:53:49 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT


officers of the court that have engaged in and/or permitted the misconduct to infiltrate the criminal system; to notify

and warn parties and their representation of officers of the court that have engaged in and/or permitted the misconduct to

injure parties; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

169.  In breach of their duty of care, the lower court interferred with litigation pending in the Alabama Court of Civil Appeals.

The lower court successfully suppressed evidence of fraud upon the court executed by the mother of the USAO star witness.

Both courts conspired to dismiss the pending challenge to a fraudulent protection from abuse order issued by the Circuit Court

in Dale County, Alabama, eventhough material and exculpatory testimonial statements existed that was contrary to that ruling.

170.  A special relationship existed between the lower court, an agent of USA and VZW, as well as a relationship of providing

due process whereby the said Defendants owed Plaintiff a duty to, inter alia, protect him from conspiratorial misconduct by

their officers of the court and employees; employ and retain suitable officers of the court and employees to whom they

entrusted the care of those being prosecuted; institute and enforce appropriate policies, procedures, rules, regulations, and

requirements necessary to prevent conspiratorial misconduct directed at those being prosecuted; to adequately train and

educate its officers of the court and employees on detecting indicia of conspiratorial behaviors and/or reporting to supervisors

any reasonable suspicion of conspiratorial misconduct; to investigate complaints of conspiratorial misconduct against officers

of the court and employees; to terminate and/or revoke the license of officers of the court and employees that have engaged

in and/or permitted conspiratorial misconduct; to notify and warn parties and their representation that have engaged in

and/or permitted the conspiratorial misconduct to infiltrate the criminal system; and/or to otherwise conduct themselves with

due care so as to avoid injuring Plaintiff.

171.  In breach of their duty of care, the lower court and VZW colluded to deprive Joyner of the proceeds of a subpoena

previously provided for the FBI.  Both knew that the records contained material and exculpatory testimonial statements of

threatening and harassing calls and texts towards the USAO star witness from her mother.  They conspired to deprive the

Plaintiff of those proceeds of the subpoena, eventhough they knew the excessive calls and texts revealed an intimidation

campaign by many within the community, including the wife of the Dale County District Attorney.

172.  A special relationship existed between the lower court and the appellate court, both agents of USA, as well as a

relationship to protect Plaintiff from civil conspiracy, whereby the said Defendants owed Plaintiff a duty to, inter alia, protect

28

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/22/2026 08:35:17 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

him from conspiratorial misconduct by their officers of the court; employ or retain officers of the court to whom they

entrusted the care of those being prosecuted; institute and enforce appropriate policies, procedures, rules, regulations and

requirements necessary to prevent conspiratorial misconduct directed at those being prosecuted; to adequately train and

educate its officers of the court on detecting indicia of conspiratorial behaviors and/or reporting to supervisors any

reasonable suspicion of conspiratorial misconduct; to investigate complaints of conspiratorial misconduct against officers of

the court; to terminate and/or impeach officers of the court that have engaged in and/or permitted the conspiratorial

misconduct; to notify and warn parties and their representation of officers of the court that have engaged in and/or permitted

the conspiratorial misconduct to infiltrate the criminal system; and to otherwise conduct themselves with due care so as to

avoid injuring the Plaintiff.

173. In breach of their duty of care, the lower court and the appellate court colluded to deprive Joyner of the proceeds of a

Verizon Wireless subpoena previously provided for the FBI. Both knew that the records as well as the PFA Hearing and 2nd

Interview contained material and exculpatory testimonial statements that ranged from threatening and harassing calls and

texts towards the USAO star witness from her mother along with testimonial statements that negated an element of the

charged offense. They conspired to deprive the Plaintiff of those evidentiary items, eventhough they knew that excessive

calls and texts as well as material and exculpatory testimonial statements within revealed that Joyner was not guilty of the

charged offense.

174. A special relationship existed between the appellate court and the Supreme Court, both agents of USA, as well as a

relationship of due process, whereby the said Defedants owed Plaintiff a duty to, inter alia, protect him from conspiratorial

misconduct; employ or retain suitable officers of the court to whom they entrusted the care of those who had been convicted;

institute and enforce policies, procedures, rules, regulations and requirements necessary to prevent conspiratorial misconduct

directed at those who had been convicted; to adequately train and educate its officers of the court on detecting indicia of

conspiratorial behaviors and/or reporting to the Chief Judge any reasonable suspicion of conspiratorial misconduct; to

investigate complaints of conspiratorial misconduct against officers of the court; to impeach and/or revoke the licenses of

officers of the court that have engaged in and/or permitted conspiratorial misconduct; to notify and warn parties and their

representation of officers of the court that have engaged in and/or permitted conspiratorial misconduct to infiltrate the

---------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/22/2026 09:07:15 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

criminal system; and/or to otherwise conduct themselves with due care so as to avoid injuring the Plaintiff.

175. In breach of their duty of care, the appellate court and the Suprem Court by way of due deferrence deprived Joyner of due process as it relates to an extension of deprivation of the VZW subpoena. There, the record revealed that the FBI, USAO, FPD, lower court, appellate court and Supreme Court knew that the lower court authorized a conspiracy to conceel material and exculpatory testimonial statements contained within the PFA Hearing and the 2nd Interview as well as the Verizon Wireless records. When neither, including Verizon Wireless objected, reported or raised the due process violation with their supervisor or Chief Judge, they joined the conspiracy to conceal those evidentiary items, especiall when Katie Hiedrick, clerk of the Supreme Court decided to not docket a letter requesting a rehearing of a stay application.

176. Said Defendants. and each of them, breached said duties by, inter alia, failing to sufficiently provide due process to Joyner before convicting him at trial, permitting the criminal system to discriminate against Plaintiff based upon his gender; permitting VZW and the criminal system to conspire to deprive Plaintiff of his due process rights; failing to detect the criminal systems course of conspiratorial behavior towards Plaintiff and/or the effects of their due deferrential extension to the courts below, especially the misconduct of Katie Hiedrick; failing to approp[riately educate and/or train employees and officers of the court on detecting and/or deterring deprivation of due process; failing to exercise control over employees and the criminal system and/or intervene on Plaintiff's behalf; failing to implement and/or enforce proper policies and procedures for the protection of parties; and failing to notify and warn Plaintiff or his representation that the criminal system posed significant risk to Plaintiff's right to due process.

WHEREFORE, because the law of the Third Circuit explicitly states "a claim for civil conspiracy requires that two or more people conspire to do an unlawful act (See McGreevy v. Stroup, 413 F.3d 359, 371 (3rd Cir. 2005) and the claim supra 1) has been filed within the statutory time limit imposed by 28 U.S.C. & 2401(a); 2) has been filed pursuant to a limited waiver as expressed within 28 U.S.C. & 2679(b)(2) and/or 28 U.S.C. & 2680(a) and/or 28 U.S.C. & 1346(b)(1); 3) has been filed after identifying the existence of a physical injury to his dental capacity as promulgated by 28 U.S.C. & 1346(b)(2); 4) has been filed by properly identifying employees of the United States of America pursuant to 28 U.S.C. & 2671; and 5) has been filed by recognizing that the willful and negligent acts and ommissions of their officers invokes the United States as the Defendant as

30

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/23/2026 06:26:37 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT


noticed in 28 U.S.C. & 1346(b)(1), Plaintiff demands judgment against Defendants VZW and USA for compensatory damages,

prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just

and proper.

### COUNT FOUR

----

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (NEW JERSEY)

177. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

178. Defendants' own conduct by and through its employees/agents, including, but not limited to FBI, USAO, FPD, lower court,

appellate court and Supreme Court, who colluded to deprive the due process rights of the Plaintiff, was deliberate or reckless

infliction of mental suffering.

179. All Defendants knew or should have known that the defense needed material and exculpatory testimonial statements

from the star witness' VZW records, PFA Hearing and 2nd Interview. To conceal, suppress and destroy those evidentiary items

was not only outside the scope of their employment, but was purposed to gain a conviction. The Defendants knew that a

conviction was not possible in light of the material and exculpatory testimonial statements. That conduct injured Joyner.

180. The conduct of said Defendants including, but not limited to, deprivation of due process, gender discrimination, civil

conspiracy as well as negligence and wantonness were outrageous and was so extreme as to exceed all bounds of decency

usually tolerated in a civilized community, especially a democracy with an established constitution.

181. All Defendants entered a conspiracy to deprive Plaintiff of due process based upon his gender despite knowing that their

misconduct would lead to an unlawful conviction. The conduct was known to be negligent and was purposed to achieve the

desired end goal of a conviction.

182. In performing such conspiratorial and deprivational acts upon Plaintiff, said Defendants acted with reckless disregard of

the probability that Plaintiff would suffer physical and/or emotional distress.

183. All Defedants knew that the said acts injured the Plaintiff as evidenced by his raising of the issues within pleadings. No

Defendant reported the misconduct or objected to its execution.

31

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

---------------------------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/23/2026 07:11:55 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

184. The conduct caused Plaintiff emotional distress, which distress was severe. Defendants conduct and actions by and through its employees/agents, including, but not limited to, FBI, USAO, FPD, lower court, appellate court and Supreme Court, was the direct and proximate cause of severe emotional distress to Plaintiff.

185. All Defendants perfected their role in the conspiracy to achieve the desired result of a conviction. There, each destroyed, concealed and suppressed material and exculpatory testimonial statements and evidence in concert.

186. As a direct and proximate result of the intentional acts of Defendants acting by and through its employees/agents, including, but not limited to, FBI, USAO, FPD, lower court, appellate court and Supreme Court, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, expense of clinical care, medical care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, because the law of the Third Circuit explicitly states "in order to state a claim of intentional infliction of emotional distress, ... a plaintiff must allege 1) the defendant's conduct was extreme and outrageous; 2) the conduct was intentional and reckless; 3) the conduct caused emotional distress; and 4) the distress is severe. See Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3rd Cir. 1979) and the claim supra 1( has been filed within the statutory time limit imposed by 28 U.S.C. & 2401(a); 2) has been filed pursuant to a limited waiver as expressed within 28 U.S.C. & 2679(b)(2) and/or 28 U.S.C. & 2680(a) and/or 28 U.S.C. & 1346(b)(1); 3) has been filed after identifying the existence of a physical injury to his dental capacity as promulgated by 28 U.S.C. & 1346(b)(2); 4) has been filed by properly identifying employees of the United States of America pursuant to 28 U.S.C. & 2671, and 5) has been filed by recognizing that the willful and negligent acts and ommissions of employees of the United States acting within the scope of their office invokes the United States as the Defendant as noticed in 28 U.S.C. & 1346(b)(1), Plaintiff demands judgment against Defendants VZW and USA for compensatory damages, prejudment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

----------------------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/23/2026 07:41:01 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

COUNT FIVE
_____

WILLFUL NEGLIGENCE & WANTONNESS
(NEW JERSEY)

187. Plaintiff realleges all prior pargraphs of the Complaint as if set forth fully herein.

188. A special relationship existed between said Defendants VZW and USA, as well as a relationship of due process with Plaintiff, whereb all of said Defendants owed Plaintiff a duty to, inter alia, protect him from deprivational, discriminatory and conspiratorial misconduct by their employees and agents; employ or retain suitable employees and agents to whom they entrusted the care of their consumers and parties; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent deprivation of due process directed at parties by the criminal system; to adequately train and educate its employees and agents on detecting indicia of discriminatory behaviors and/or reporting to supervisors any reasonable suspicion of gender discrimination and civil conspiracy; to investigate complaints of misconduct against employees and agents; to terminate and/or revoke the licenses of employees and agents that have engaged in and/or permitted the misconduct; to notify and warn parties and their representation of employees and agents that have engaged in and/or permitted the misconduct to infiltrate the criminal system; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

189. In breach of their duty of care, both Defendants had a duty to provide Joyner VZW records. Failure to do so was willful negligence, especially when both disregarded a court issued subpoena. Their ex parte communication with Verizon Wireless was purposed not only to conceal the FBI destruction of evidence, but to secure a conviction.

190. A special relationship existed between the FBI, an agent of USA and the Plaintiff, as well as a relationship of due process, whereby the said Bureau owed Plaintiff a duty to, inter alia, protect him from deprivation of due process, gender discrimination and civil conspiracy by their agents and investigators; employ or retain suitable agents to whom they entrusted the care of those under investigation; institute and enforce appropriate policies, procedures, rules, regulations and requirements necessary to prevent deprivation of due process directed at those under investigation; to adequately tran and educate its agents and investigators on detecting indicia of discriminatory behaviors and/or reporting to supervisors any reasonble suspicion of misconduct; to investigate complaints of misconduct against agents; to terminate and/or revoke the

33

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/23/2026 08:13:07 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

license of agents tht have engaged in and/or permitted the misconduct; to notify and warn parties and their representation of agents that have engaged in and/or permitted the misconduct to infiltrate the criminal system; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

191. In breach of their duty of care, the FBI understood that the charging of 18 U.S.C & 2423(a) required the intent to travel within interstate commerce to engage in unlawful sexual activity. To conceal, suppress and destroy material and exculpatory testimonial statements and evidence that negated an element of the charged offense was clearly outside the scope of employment. As a result, the FBI willfully and negligently sought to injure Plaintiff in order to secure a conviction.

192. A special relationship existed between the USAO, an agent of USA and Plaintiff, as well as a relationship of due process, whereby the said attorneys owed Plaintiff a duty to, inter alia, protect him from deprivational, discriminatory and conspiratorial misconduct; employ or retain suitable attorneys to whom they entrusted the care of those being prosecuted; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent deprivation of due process directed at those being prosecuted; to adequately train and educate its attorneys on detecting indicia of discriminatory behaviors and/or reporting to supervisors any reasonable suspicion of misconduct; to investigate complaints of misconduct against attorneys; to terminate and/or revoke the license of attorneys that have engaged in and/or permitted the misconduct; to notify and warn parties and their representation of attorneys that have engaged in and/or permitted the misconduct and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

193. In breach of their duty of care, the USAO was aware of the facts of the case, including testimonial statements and evidence negating any federal offense were insufficient to garner a conviction. To ask VZW for assistance in covering up material and exculpatory calls and text messages as well as hearing and interview testimony was willfully and negligently executed to injure Joyner in order to secure a conviction. This conduct was clearly outside of their employment.

194. A special relationship existed between the FPD and Plaintiff, as well as a relationship of due process, whereby the said Defenders owed Plaintiff a duty to, inter alia, protect him from deprivational, discriminatory and conspiratorial misconduct; employ or retain suitable Defenders to whom they entrusted the care of those being defended; institute and enforce appropriate policies, procedures, rules, regulations and requirements necessary to prevent misconduct directed at those being defended; to adequately train and educate its Defenders on detecting indicia of discriminatory behaviors and/or reporting

TRULINCS 18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

--------------------------------------------------------------------------------

FROM: 18079002
TO: Legal
SUBJECT: ***Request to Staff*** JOYNER, LEROY, Reg# 18079002, YAZ-B-A
DATE: 01/23/2026 08:44:43 AM

To:
Inmate Work Assignment: U.S. DISTRICT COURT

to supervisors any reasonable suspicion of misconduct; to investigate complaints of misconduct against Defenders that heve

engaged in and/or permitted the misconduct to infiltrate the criminal system; and/or to otherwise conduct themselves with

due care so as to avoid injuring Plaintiff.

195. In breach of their duty of care, the FPD knew that Joyner did not plan to travel within interstate commerce to engage in

unlawful sexual activity. To fail to raise the non-disclosure of VZW records and 2nd Interview with the court and play the

exculpatory hearing audio for the jury injured the Plaintiff. This was clearly outside the scope of employment.

196. A special relationship existed between the lower court, appellate court and Supreme Court and Plaintiff, as well as a

relationship that when they became aware of the existence of material and exculpatory testimonial statements and evidence

being excluded from testimony at trial, they had a duty to cure the defect of the proceedings. As a proximate result of

Defendants' negligence and wantonness, especially the lower court, appellate court and Supreme Court, the Plaintiff suffered a

deprivation of his rights to due process and Plaintiff was injured and damaged as follows: Plaintiff suffered bodily injury and

resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, ;oss of capacity for the enjoyment

of life, expense of hospitalization, medical cre and treatment, loss of earnings, and loss of ability to earn money. The losses

are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, because the law of the Third Circuit explicitly states "a defendant who negligently injured a plaintiff or his

property may be liable for all proximately caused harm, including economic losses." See Paramount Aviation Corp. v. Gruppo

Agusta, 288 F.3d 67, 76 (3rd Cir. 2002) and the claim supra 1) has been filed within the statutory time limit imposed by 28

U.S.C. & 2401(a); 2) has been filed pursuant to a limited waiver as expressed within 28 U.S.C. & 2679(b)(2) and/or 28 U.S.C.

& 2680(a) and/or 28 U.S.C. & 1346(b)(1); 3) has been filed after identifying the existence of a physical injury to his dental

capacity as promulgated by 28 U.S.C. 1346(b)(2); 4) has been filed by properly identifying employees of the United States of

America pursuant to 28 U.S.C. & 2671; and 5) has been filed by recognizing that the willful and negligent acts and ommissions

of employees of the United States acting within the scope of their office invokes the United States as the Defendant as

noticed in 28 U.S.C. & 1346(b)(1), Plaintiff demands judgment against Defendants VZW and USA for compensatory damages,

prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just

and proper.

35

TRULINCS  18079002 - JOYNER, LEROY THOMAS JR - Unit: YAZ-B-A

------------------------------------------------------------------------------------------

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

SUBMITTED: JANUARY 23, 2026

Leroy Thomas Joyner, Jr.
FCC Yazoo City (Low)
P.O. Box 5000
Yazoo City, MS  39194
Email: grasschange@gmail.com